## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATEEFAH BROWN,<br><br>                 Plaintiff,<br><br>v.<br><br>SWEETWATER UNION HIGH SCHOOL DISTRICT, et al.,<br><br>                 Defendants. | Case No.: 24-CV-0493 W (MMP)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [DOC. 32]** |

      Pending before the Court is Defendants' motion to dismiss the First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The FAC asserts federal and state causes of action based on allegations of racial discrimination, harassment, and intimidation directed at Plaintiff while teaching at Sweetwater Union High School. Although Plaintiff does not allege that any of the individually named defendants posted or wrote any of the offensive messages or cartoons, she contends they are liable for their complete "indifference and inaction" to the conduct, which caused her to suffer fear, anxiety and severe emotional distress.

      The Court decides the matters on the papers submitted and without oral argument. See Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** the motion to dismiss [Doc. 32].

I. **BACKGROUND**

    A. **The parties.**

From 2019 through December 2023, Plaintiff Lateefah Brown was a science teacher at Otay Ranch High School in Defendant Sweetwater Union High School District (the "District"). (*FAC* [Doc. 17] ¶ 4.) She was the only African American teacher in the science department and the only African American teacher instructing non-special education students at the school. (*Id.* ¶¶ 3, 5.) Beginning in August of 2020 and continuing until October 31, 2023, Plaintiff contends there were eight separate incidents of racial discrimination, harassment and intimidation directed at her.

    Defendant District employs over 3,000 teachers and staff. (*FAC* ¶ 7.) Defendant Dr. Moises Aguirre was the Superintendent during seven of the eight incidents of discrimination, harassment or intimidation described in the FAC. (*Id.* ¶ 8.) Defendant Mary Rose Peralta was the principal at Otay Ranch High School during three of the incidents. (*Id.* ¶ 14.) The remaining Defendants—Nicholas Segura, Adrian Arancibia, Marti Emerald, Elva Lopez-Zepeda and Arturo Solis (collectively, the "Trustee Defendants")—were members of the District's Board of Trustees during all or "many" of the incidents. (*Id.* ¶¶ 9–13.)

    B. **Eight incidents of discrimination, harassment and intimidation.**

On Friday, August 28, 2020, Plaintiff received a message on her first period class Teams account stating: "Lateefah Brown u a bitch ass [N-word]." (*FAC* ¶ 60, n. 2.[1]) The message, which was visible to everyone in Plaintiff's first period class, was posted after school and thus was not seen until the following Monday. (*Id.*) Plaintiff reported the incident to the then principal and assistant principal. (*Id.* ¶ 63.) The FAC alleges that Defendants did not condemn the conduct or take any meaningful action to investigate the incident or prevent future incidents. (*Id.* ¶¶ 64, 66–68.)

---

[1] Pictures of the offensive messages and cartoons are included in the FAC.

The second incident occurred on Monday, September 28, 2020, when Plaintiff received the following communication on another online learning platform teachers used during remote learning: "Pussy," "Foot," "[N-word]." (*FAC* ¶¶ 69, 70, n. 3.) Plaintiff again immediately reported the incident to the then principal and vice principal. (*Id.* ¶ 71.) They never notified Plaintiff of any findings or measures to investigate the incident or prevent its recurrence. (*Id.* ¶ 72.) The FAC further alleges Defendants again did not condemn the behavior, did not tell other staff, students or the broader community about the incident, "did not take meaningful action to investigate this incident" and "did not take meaningful action after this incident to dissuade further acts of hate against Ms. Brown." (*Id.* ¶¶ 74–77.)

The third incident occurred on Thursday, October 1, 2020. (*FAC* ¶ 78.) During online learning, messages were sent in the classroom chat that were visible to all students. (*Id.*) The messages included racist and sexually explicit cartoons. (*Id.* ¶¶ 79–81.) Plaintiff again reported the incident to the principal and vice principal.[2] (*Id.* ¶ 83.) In addition, Plaintiff emailed Dr. Joe Fulcher, the District Assistant Superintendent about the August, September and October incidents. (*Id.* ¶¶ 87, 88.) Plaintiff stated that she had "not been informed of adequate progress from the first or second incidents and the attacks/assaults have escalated since the first incident." (*Id.* ¶ 89.) She also asserted that it was "the responsibility and obligation of the district to safeguard the students, employees and teaching staff from this explicit content" and requested a "swift, serious, high level response." (*Id.* ¶ 90.) On October 7, Dr. Fulcher responded with an email stating that he was "monitoring [her] situation" and inviting her to participate in a "Black Minds Matter" advocacy group so she could "share [her] story with the group (for ideas about school and community interventions)." (*Id.* ¶ 93.)

Plaintiff also emailed David Delacalzada, the District's Director of Information Technology and Enterprise Architecture, seeking assistance to stop the online

---

[2] In October 2020, the principal was replaced by Defendant Peralta. (*Id.* ¶ 84.)

harassment. (*FAC* ¶ 94.) More than a month after emailing him, Mr. Delcalzada's secretary emailed Plaintiff to schedule a remote meeting. (*Id.* ¶ 98.[3])

In addition to Plaintiff's actions, on October 2, 2020, her fellow teachers in the Science Department pleaded with the principal and others in the administration to "do something to meaningfully support Ms. Brown and put an end to the repeated attacks." (*FAC* ¶ 99.) Her peers recommended several potential steps that could be taken. (*Id.* ¶¶ 106–111.) However, the FAC alleges Defendants failed to condemn the behavior, did not tell staff or students about the behavior, and did not take any meaningful action to investigate or condemn the behavior. (*Id.* ¶¶ 112–116.)

The fourth incident occurred on March 4, 2022, when Plaintiff found a school board eraser she had purchased with the N-word written on it. (*FAC* ¶ 117.) She reported the incident to Principal Peralta and the assistant principal. (*Id.* ¶ 119.) Defendants failed to condemn the behavior or take any meaningful action after the incident to investigate or dissuade further discrimination against Plaintiff. (*Id.* ¶¶ 120–124.)

The next incident occurred on February 24, 2023, when Plaintiff discovered the N-word carved into a desk in her classroom. (*FAC* ¶ 125.) She immediately reported the incident to Principal Peralta and the assistant principal. (*Id.* ¶ 127.) She asked them and others if the District had a "policy on the use of hate speech or derogatory terms toward marginalized groups of people?" and stated that it was time to develop one and make "students, parents and teachers aware of it." (*Id.* ¶¶ 128, 129.) In addition, Plaintiff's colleagues again came to her defense and "implored Defendants to take swift action." (*Id.* ¶ 133.) Nevertheless, Plaintiff contends Defendants again failed to condemn the behavior or take any meaningful action after the incident to investigate or dissuade further discrimination against Plaintiff. (*Id.* ¶¶ 135–137.)

On April 27, 2023, Plaintiff "discovered a caricature of a monkey with a message bubble saying 'hey monkey' on the white board at the front of her Otay Ranch High

---

[3] The FAC uses two different spellings: "Delacalzada" (¶ 94) and "Delcalzada" (¶¶ 96–98).

School classroom." (*FAC* ¶ 138.) She immediately reported it to Principal Peralta and the assistant principal. (*Id.* ¶ 140.) As a result of the repeated racist incidents directed at Plaintiff and the administration's failure to take any action, Plaintiff contends she felt unsafe on campus and began suffering severe emotional distress. (*Id.* ¶¶ 141–143.) Plaintiff stopped teaching for the rest of the school year. (*Id.* ¶ 144.)

When Plaintiff returned the following school year, she was hit by a water bottle while attending a school assembly on October 31, 2023. (*FAC* ¶ 164.) Another teacher soaked by the water from the bottle that hit Plaintiff took pictures of the students in the crowd. (*Id.* ¶ 165.) Although the assistant principal stated she would investigate the incident, Plaintiff was never provided any details or findings about the incident. (*Id.* ¶¶ 167, 168.) Additionally, Defendants did not condemn the behavior or take meaningful action to investigate or dissuade further acts against Plaintiff. (*Id.* ¶¶ 170–173.)

The final and eighth incident occurred on December 1, 2023, when Plaintiff found the "N-word" written on a student's assignment. (*FAC* ¶ 174–175.) Plaintiff immediately reported the incident to the interim principal and multiple assistant vice principals. (*Id.* ¶ 176.) Although Plaintiff was finally interviewed by the Chief Compliance Officer about the incident, ultimately Defendants did not condemn the behavior or take meaningful action to investigate or dissuade further acts against Plaintiff. (*Id.* ¶¶ 180, 181, 186–188.)

C. **The District investigates the adequacy of its response.**

After the sixth incident, the District, Principal Peralta and Superintendent Aguirre "initiated a purported investigation of the incidents…." (*FAC* ¶ 150.) However, the FAC alleges the investigation was not about ending the harassment or protecting Plaintiff, but instead to "justify their own response (or lack thereof)." (*Id.* ¶¶ 151–152.) Defendants "hired an attorney who conducted interviews about the adequacy of [the District's] previous responses to the repeated hate incidents." (*Id.* ¶ 153.) On July 25, 2023, the investigation was closed and found that "it was 'unlikely' that Defendants' 'actions' in

response to Ms. Brown's ongoing harassment 'would constitute negligence or a ratification of misconduct.'" (*Id.* ¶ 154.)

Plaintiff appealed the investigation's conclusion to the Board of Trustees. (*FAC* ¶ 155.) On August 14, 2023, Plaintiff appeared with counsel to argue the appeal before the Trustee Defendants. (*Id.* ¶ 156.) Plaintiff contends that during the proceedings, certain Trustee Defendants "appeared visibly disinterested in what was being discussed and preoccupied with their cellphones." (*Id.* ¶ 157.) Plaintiff's counsel explained that under "California law (Cal. Gov't Code § 12940(j)(1)) Defendants were required to take 'all reasonable steps to prevent harassment' of Ms. Brown from occurring" and pointed out that the Trustee Defendants had previously publicly condemned more isolated antisemitic and anti-Latino conduct. (*Id.* ¶¶ 158, 159.)

On August 18, 2023, the Board of Trustees denied Plaintiff's appeal. (*FAC* ¶ 160.) Plaintiff contends the "Board's failure to acknowledge, condemn, and take effective steps to prevent future harassment of Ms. Brown caused her grief, despair, loss of enjoyment of life, inability to sleep, fear for her safety, anxiety, and severe emotional distress." (*Id.* ¶ 161.)

After the Board of Trustee's alleged failure to address or attempt to prevent future harassment, two more incidents occurred: the thrown water bottle which struck Plaintiff and the "N-word" written on a student's homework assignment. (*FAC* ¶¶ 164, 174, 175.)

### D.     **Plaintiff's lawsuit.**

On March 13, 2024, Plaintiff filed this lawsuit. (*Compl.* [Doc. 1].) On May 20, 2024, Plaintiff filed the FAC, which asserts fourteen counts for: (1) violation of 42 U.S.C. §§ 1981, 1983 based on a hostile work environment (race); (2) violation of 42 U.S.C. §§ 1981, 1983 based on disparate treatment (race); (3) violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII") based on a hostile work environment (race); (4) violation of Title VII based on disparate treatment (race); (5) violation of Title VII based on retaliation; (6) violation of Cal. Government Code §§ 12923, 12940(j) based on work

environment harassment; (7) violation of Cal. Government Code §§ 12923, 12940(k) based on failure to prevent harassment; (8) violation of Cal. Government Code §§ 12923, 12940(j) based on failure to prevent harassment by nonemployee; (9) violation of Cal. Government Code § 12940(a) based on disparate treatment; (10) violation of Cal. Government Code §§ 12923, 12940(k) based on failure to prevent discrimination; (11) violation of Cal. Government Code § 12940(a) based on constructive discharge; (12) violation of Cal. Government Code § 12940(h) based on retaliation; (13) negligence; and (14) intentional infliction of emotional distress.

Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*Notice of Motion* [Doc. 1] 1:24–3:25.) Plaintiff opposes the motion.

## II.     LEGAL STANDARD

A challenge based on the court's lack of subject matter jurisdiction is made under Federal Rule of Civil Procedure 12(b)(1). Because subject matter jurisdiction is a threshold issue, a Rule 12(b)(1) challenge should be decided before other grounds for dismissal. *Alvares v. Erickson*, 514 F.2d 156, 160 (9th Cir. 1975).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). But a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

### III. DISCUSSION

### A. Counts I and II for violation of 42 U.S.C. §§ 1981 and 1983.

Defendants move to dismiss Counts I and II against the individually named defendants (collectively, the "Individual Defendants") on several grounds. First, they contend they are entitled to various forms of immunity. (*P&A* [Doc. 32-1] 7:23–28.) Second, they argue that certain allegations supporting these counts are barred by the statute of limitations. (*Id.* 15:10–16:10.) Third, the individual defendants argue that the FAC's allegations are insufficient to state claims for violation of 42 U.S.C. §§ 1981 and 1983 based on the hostile work environment and disparate treatment theories of liability. (*Id.* 7:28–8:2.) The Court will evaluate each argument separately.

#### 1. Immunity

The Individual Defendants argue that they are entitled to Eleventh Amendment Immunity, absolute legislative immunity or qualified immunity. For the reasons that follow, the Court disagrees.

##### (i) Eleventh Amendment immunity

The Individual Defendants argue that despite being sued "individually," because Plaintiff's claims are based entirely on conduct performed in their official capacity—i.e., as part of their normal job duties for the District—they are entitled to Eleventh Amendment immunity. (*P&A* 9:12–11:28.) Plaintiff responds that the FAC not only names "each of the Individual Defendants in their individual capacities" but also "includes allegations that they each personally engaged in the infringing behavior." (*Opp'n* [Doc. 33] 2:22–26.)

In evaluating whether a state official is being sued in their individual or official capacity, courts look beyond "how the suit is labeled by the plaintiff" and instead look at "the nature of the suit." *Marketing Information Masters v. Cal. State. Univ.*, 552 F.Supp.2d 1088, 1095 (S.D. Cal. 2008). Where the defendant is alleged to have

personally participated in the wrongful conduct, the defendant is being sued in their personal capacity. *Id.* at 1096 (because defendant "personally engaged in the infringing behavior, the Court finds Plaintiff seeks relief from [defendant] in his individual capacity…."); *Lema v. Board of Trusts of Cal. State Univ. System*, 2023 WL 3572882, *4 (S.D. Cal. May 17, 2023) (finding no Eleventh Amendment immunity because the complaint "includes allegations that the individual Defendants personally engaged in the infringing behavior."). Accordingly, the issue is not whether the Individual Defendants' conduct was part of their "normal job duties" (*e.g.*, *P&A* 10:14–27) but whether the FAC alleges each defendant personally participated in the wrongful conduct.

Here, the alleged wrongful conduct involved a failure to act. Plaintiff's claims are based on the theory that the Individual Defendants knew about the ongoing discrimination, harassment and intimidation, were obligated to take some action to address the wrongful conduct yet failed to do anything. (*See, e.g.*, FAC ¶¶ 119, 127, 140, 150–154.)

As an initial matter, Plaintiff's theory is supported by case law. In *Rodriguez v. Maricopa Cty. Community College Dist.*, 605 F.3d 703 (9th Cir. 2010), Hispanic employees filed a lawsuit against a community college district, its governing board and two administrators claiming—similar to Plaintiff here—that the defendants failed to properly respond to a professor's racially charged emails that created a hostile work environment in violation of Title VII and the Equal Protection Clause. Although the Ninth Circuit concluded that defendants were entitled to qualified immunity because the racially charged emails were protected First Amendment speech, the court made clear that the theory was otherwise clearly established:

> It's clearly established in our circuit that public employees are entitled to be free of purposeful workplace harassment on the basis of protected status. *See Alaska v. EEOC*, 564 F.3d 1062, 1069 (9th Cir. 2009) (en banc); *Bator v. Hawaii*, 39 F.3d 1021, 1029 (9th Cir. 1994). Defendants therefore do not dispute that employers who become aware of workplace harassment are required to take reasonable steps to make it stop.

*Id.* at 707. In discharging this duty to stop known workplace harassment, the Ninth Circuit further explained:

> employees are entitled to have the employer take reasonable and appropriate steps to investigate and make it stop. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1479–80 (3d Cir. 1990). A warning or other discipline, even dismissal, may be the appropriate action in some circumstances, but the proper object of an employer's response is to deter and stop further harassment, not to punish the harasser. *See, e.g., Bator*, 39 F.3d at 1029.

*Id.* Under *Rodriguez*, whether the Individual Defendants are truly being sued in their individual capacity depends on if the FAC alleges facts indicating (1) they were each aware of the wrongful conduct and (2) failed to take any reasonable and appropriate steps to investigate and make it stop.

The FAC's allegations clearly demonstrate that at some point, each of the Individual Defendants learned that Plaintiff was the target of ongoing racial discrimination, harassment and intimidation. The FAC alleges that Plaintiff immediately reported three of the incidents to Principal Peralta. (*FAC* ¶¶ 119, 127, 140.) The FAC also alleges that Superintendent Aguirre investigated the District's response to the first six incidents and that the Trustee Defendants denied Plaintiff's appeal of the investigation's findings. (*Id.* ¶¶ 150–152, 155, 156, 160.) The only reasonable inference to be drawn from these allegations is that each of the Individual Defendants were notified about the first six incidents directed at Plaintiff. The FAC further alleges that none of the Individual Defendants attempted to take any steps to investigate the incidents, to help Plaintiff or to prevent additional incidents. (*Id.* ¶¶ 120–124, 135–137, 151, 160–163, 169–173, 185–192.) Finally, the FAC alleges that after the Board of Trustee's denied Plaintiff's appeal and failed to take any steps to prevent further harassment, Plaintiff was subjected to two additional racist incidents. (*Id.* ¶¶ 164–176.) Based on these allegations, the Court finds the Individual Defendants are being sued in their individual capacities for failing to take reasonable steps to investigate and at least attempt to end the wrongful conduct directed at Plaintiff.

In the reply, Defendants appear to concede that the FAC sufficiently alleges claims against Principal Peralta and Superintendent Aguirre individually, but urge "Eleventh Amendment immunity is particularly applicable to the individual Trustee Defendants." (*Reply* [Doc. 34] 2:7–20.) In support, Defendants cites *Lema v. Bd. Of Trustees of California State Univ. Sys.*, 2023 WL 3572882 (S.D.Cal. 2023). (*Id.*) The reply also points out that the FAC repeatedly lumps the Trustee Defendants together, making "it clear that the individual Trustees are being sued not because of their specific individual conduct, but because of the fact they occupy a seat on the Board and Plaintiff believes the Board as a whole should have done more in response to her complaints." (*Id.* at 2:14–20.) Finally, the reply also contends that there "are no allegations which indicate each of the individually named Defendants were directly notified or involved in responding to these incidents at the time they occurred." (*Id.* at 3:1–3.)

Defendants' reliance on *Lema* is unavailing for two reasons. First, the factual background in *Lema* never mentions the defendant board or any of the individual board members. It is, therefore, entirely unclear whether the board or its members were ever involved or learned about the wrongful conduct directed at plaintiff. In contrast, here, the FAC's allegations indicate the Board was aware of the ongoing wrongful conduct targeting Plaintiff, denied Plaintiff's appeal of the investigation and did nothing to investigate or prevent further acts of racial discrimination, harassment or intimidation directed at Plaintiff.

Second, the plaintiff in *Lema* conceded that the board of trustees were entitled to sovereign immunity, presumably because the complaint was devoid of factual allegations regarding the board of trustees or its members. Because plaintiff conceded the sovereign immunity issue, *Lema* is simply not helpful to evaluating the issue in this case.

The Court nevertheless acknowledges that whether the Trustee Defendants are truly being sued in their individual capacity is a closer call than with regard to Principal Peralta and Superintendent Aguirre. Defendants, however, do not address *Rodriguez*— which was cited in Plaintiff's opposition and supports the theory that if aware of the

11

24-CV-0493 W (MMP)

wrongful conduct, the Trustee Defendants are liable for failing to take steps to prevent further discrimination.

For these reasons, the Individual Defendants are not entitled to Eleventh Amendment immunity.

### *(ii)* *Absolute and legislative immunity.*

The Trustee Defendants argue they are entitled to absolute immunity because all their actions were "taken 'in the sphere of legitimate legislative activity.'" (*P&A* at 13:9–13.). There are two problems with this argument.

Defendants' claim they are entitled to absolute immunity is contrary to established Supreme Court law. In *Wood v. Strickland*, 420 U.S. 320 (1975), the Supreme Court rejected an argument by school board members that they were entitled to absolute immunity. *Id.* at 314, 322. Instead, the Court held that "[c]ommon-law tradition, recognized in our prior decisions, and strong public-policy reasons lead to a construction of § 1983 extending a *qualified* immunity to school board members from liability for damages under that section." *Id.* at 318 (emphasis added) (*overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 817, 815–816 (1982)). For this reason, Defendants' citation to *Bogan v. Scott-Harris*, 341 U.S. 367 (1998)—which evaluated whether a city council member was entitled to absolute legislative immunity—is unavailing.

Second, even if absolute legislative immunity applies to school boards under *Bogan*, the Trustee Defendants have failed to demonstrate their conduct involved legislative activity. "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan*, 523 U.S. at 54 (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). Thus, the issue is whether the Trustee Defendants' conduct regarding Plaintiff's appeal constitutes legislative activity.

As an initial matter, it is significant that the Trustee Defendants' fail to address this issue. Instead, their motion simply assumes that because they were meeting as a board, they were involved in legislative activity. This assumption is contradicted by one of the

cases the Trustee Defendants cite in the motion. In *Pribula v. Wyoming Area School District*, 599 F.Supp.2d 564 (M.D. Penn. 2009), the court explained that to qualify as "legislative… the act must be both substantively and procedurally legislative in nature." *Id*. at 580. "An act is substantively legislative if it involves 'policy-making of a general purpose' or 'line-drawing.' It is procedurally legislative if it is undertaken 'by means of established legislative procedures." *Id*. Under this standard, the court found the school board was entitled to legislative immunity in passing an Act that "was a general policy, applicable to all administrative staff within the Wyoming Area School District." *Id.* at 580. The board, however, was not entitled to legislative immunity in denying plaintiff's "request to postpone his retirement date." *Id.*; *see also Williams v. Alhambra School Dist. No. 68*, 234 F.Supp.3d 971, 979 (D.Ariz. 2017) (holding "[e]mployment decisions with respect to an individual are not legislative actions and are not covered by legislative immunity.") (*citing Bogan*, 523 U.S. at 55–56 and *Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir. 2002)).

Under *Pribula* and *Williams*, the Court finds the Trustee Defendants' conduct regarding Plaintiff's appeal does not constitute legislative activity to which immunity applies. The hearing and decision did not involve a general policy applicable to all teachers within the District and instead involved the appeal of the Superintendent's investigation affecting Plaintiff. As such, the conduct at issue is analogous to the board's decision in *Pribula* regarding plaintiff's request to postpone his retirement date, and the board's decision in *Williams* regarding plaintiff's employment.

For these reasons, the Trustee Defendants are not entitled to absolute or legislative immunity.

### *(iii)    Qualified immunity.*

Alternatively, the Trustee Defendants contend they are entitled to qualified immunity. In support of this argument, they argue that "the individual Defendants' omissions" do not constitute a violation of Plaintiff's constitutional rights. (*P&A* at

13

14:23–15:9.) As an example, the Trustee Defendants contend "[t]here is no constitutional right to public condemnation of certain behavior by the individual Board of Trustees." (*Id.* at 14:27–28.) Plaintiff responds that the Trustee Defendants misstate the constitutional right at issue. (*Opp'n* 7:4–13.). The Court agrees with Plaintiff.

Plaintiff's FAC makes clear that she is not claiming a constitutional right to have the Board of Trustees take any particular action, such as publicly condemn the behavior. Rather, Plaintiff is alleging that having been notified of the wrongful conduct, the Trustee Defendants violated her constitutional rights by doing nothing. As set forth above, under *Rodriguez*, 605 F.3d 703, it is "clearly established in our circuit that public employees are entitled to be free of purposeful workplace harassment on the basis of protected status" and that "employers who become aware of workplace harassment are required to take reasonable steps to make it stop." *Id.* at 707 (citations omitted). Because the Trustee Defendants allegedly did nothing to deter or stop the discrimination, harassment and intimidation, they are not entitled to qualified immunity.

### 2. The statute of limitations.

Defendants move to dismiss "portions of the allegations used to support" Counts I and II on the basis that they involve conduct barred by the statute of limitations. (*P&A* 15:11–14.) The problem with this argument is that Rule 12(b) is not the proper mechanism for eliminating specific allegations from a complaint.

By its very terms, Rule 12(b) pertains to defenses "to a claim for relief" and subsection (6) allows the filing of a motion for "failure to state a claim upon which relief can be granted[.]" Fed.R.Civ.P. 12(b)(6). As stated by the court in *Thompson v. Paul*, 657 F.Supp.2d 1113, 1129 (D.Ariz 2009), the "Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged." Because Defendants are not seeking to dismiss the "claim for relief" and instead only challenging certain allegations, Defendants' challenge lacks merit.

14

### 3. Failure to state a claim.

Defendants argue the FAC fails to state a section 1983 claim against the Individual Defendants because (1) there are no allegations "that any of the Individual Defendants were responsible for any for [sic] the alleged incidents[;]" and (2) there is no causal connection between the Individual Defendants and the alleged constitutional violation. (*P&A* 16:25–17:1.) As discussed above regarding the Eleventh Amendment and qualified immunity analysis, the FAC's allegations demonstrate (1) by the sixth incident, all of the Individual Defendants were aware Plaintiff was the target of ongoing racial discrimination, harassment and intimidation, (2) none of the Individual Defendants took any action to investigate or prevent the conduct and (3) Plaintiff suffered additional wrongful conduct after the Trustee Defendants denied her appeal. The FAC also alleges Plaintiff suffered damages, including emotional distress, as a result of the Individual Defendants' inaction. In short, the FAC adequately states a claim.

### B. Counts III, IV & V for hostile environment, disparate treatment, and retaliation under 42 U.S.C. § 2000e.

Defendants again raise the statute of limitations argument regarding "all of the alleged conduct which occurred before April 04, 2023" for Counts III, IV and V. (*P&A* 18:15–16.) Because this argument challenges specific allegations and not the entirety of Counts III, IV or V, Defendants' challenge under Rule 12(b) lacks merit.

### C. Counts XIII & IX for negligence and intentional infliction of emotional distress.

Defendants raise the following arguments regarding Counts XIII (negligence) and IX (intentional infliction of emotional distress ("IIED")): (1) the FAC's allegations are insufficient to state a claim; (2) the statute of limitations; and (3) immunity. The Court will evaluate each argument separately.

### 1. Failure to state a claim.

Defendants argue the FAC's allegations fail to state a claim for negligence and IIED against the Individual Defendant. Regarding the negligence claim, Defendants contend that "Plaintiff fails articulate the specific acts of each individual Defendant which amount to a breach of" the duty and instead asserts the breach in a "conclusory fashion…." (*P&A* 19:4–7.) This argument lacks merit.

Plaintiff contends that under California Government Code § 12940(j)(1), they were "required to take 'all reasonable steps to prevent harassment' of Ms. Brown from occurring" and thus owed her a duty to (1) use reasonable care to provide a safe environment, free from harassment and discrimination and (2) use reasonable care in responding to racial attacks. (*FAC* ¶¶ 158, 371, 372.) Defendants do not dispute they owed these duties to Plaintiff. The FAC also details eight incidents of racial discrimination, harassment and intimidation targeting Plaintiff over the course of three years. Finally, the FAC alleges that none of the Individual Defendants did anything during this time to prevent or provide a safe teaching environment to Plaintiff. Based on these allegations, the FAC states a negligence claim.

Regarding the IIED claim, Defendants contend that Plaintiff failed to plead extreme or outrageous conduct by any of the Individual Defendants. (*P&A* 20:4–6.) Again, the Court disagrees.

As pointed out in Defendants' motion, an IIED claim may be based on "extreme and outrageous conduct by each of the individual Defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress." (*P&A* 19:16–21, citing *Cochran v. Cochran*, 65 Cal.App.4th (1988).) Arguably, if this case involved one or two racist incidents targeting Plaintiff, it might be difficult to infer a reckless disregard of the probability that Plaintiff would suffer emotional distress. But that is not this case. Instead, this case involves eight incidents over the course of three years. Under these alleged circumstances, the Individual Defendants failure to act

supports an inference of reckless disregard of the probability that Plaintiff would suffer emotional distress.

### 2. Statute of limitations.

For the reasons explained above, Defendants' Rule 12(b) challenge to certain allegations is unavailing.

### 3. Immunity.

Defendants argue that because "there is no common law tort liability for public entities in California," and "such liability must be based on statute," the negligence and IIED claims fail. (*P&A* 21:11–14.) In response, Plaintiff argues that her negligence and IIED claims are based on California Government Code § 815.2(a), which provides that "public entity employers are vicariously liable for employees' negligent acts within the scope of their employment to the same extent as private employers." (*Opp'n* 24:6–19.) In its reply, Defendants do not dispute the District is vicariously liable for the negligent acts of its employees. Instead, Defendants argue Plaintiff's negligence and IIED claims fail because the Individual Defendants' wrongful conduct is covered by discretionary immunity. (*Reply* 9:8–22.)  The Court is not persuaded by Defendants' argument.

As explained above, the FAC alleges that California Government Code § 12940(j)(1) requires employers who are aware of harassment to take "immediate and appropriate corrective action." (*FAC* ¶ 50.) Thus, under this section, the Individual Defendants were "required" to take "all reasonable steps to prevent harassment…." (*Id.* ¶ 158.) Defendants do not dispute these duties or that they were aware of the numerous incidents of discrimination and harassment directed at Plaintiff. Instead, they appear to argue that the corrective action the FAC suggests they could have taken consists of discretionary acts and thus the Individual Defendants are immune.

Defendants' argument again misconstrues the FAC and Plaintiff's theory of liability. She is not suing because the Individual Defendants failed to take the specific

"corrective" steps listed in the FAC. Instead, those steps appear to be examples of things Plaintiff contends the Individual Defendants could have done. Ultimately, her claim is based on the Individual Defendants' failure to take any steps to prevent the continued discrimination, harassment and intimidation. Because the Government Code *required* the Individual Defendants to take "immediate and appropriate corrective action," they are not protected by discretionary immunity.

### 4. Punitive Damages.

The Individual Defendants argue that because they are being sued in their official capacity, they are immune from punitive damages. (*P&A* 22:19–25.) Because they are also being sued in their individual capacity, this argument lacks merit.

Next, Defendants argue the FAC fails to adequately allege each Individual Defendant's conduct that supports the request for punitive damages. For the reasons stated above regarding the IIED claim, the Court finds the FAC's allegations adequately support an inference of reckless or callous indifference to Plaintiff's rights and thus support a request for punitive damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss [Doc. 4].

**IT IS SO ORDERED**.

Dated: February 18, 2025

Hon. Thomas J. Whelan
United States District Judge